**JACKES–EVANS MANUFACTURING COMPANY, a Delaware corporation, Assignee of Jackes-Evans Manufacturing Company, a Missouri corporation, Appellant,**

v.

**JAYBEE MANUFACTURING CORPORATION, Appellee.**

**Patent Appeal No. 8886.**

United States Court of Customs and Patent Appeals.

Aug. 16, 1973.

Robert E. Wagner, Chicago, Ill., atty. of record, for appellant. William T. Bullinger, Washington, D. C., of counsel.

Fred Flam, Encino, Cal. (Flam & Flam, Encino, Cal.), attys. of record, for appellee. D. Paul Weaver, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board,[1] sustaining an opposition to the appellant's mark, used on padlocks,[2] which appears as follows:

[A7695]

Opposition was based on likelihood of confusion, mistake or deception with regard to the use of the following marks of appellee:

[A7696]

1. 165 USPQ 537 (1970).

2. Application Serial No. 272,381, filed May 25, 1967, alleging a date of first use of October 19, 1966.

These marks are registered [3] for use on "builders' finish hardware—namely, catches, hinges, pulls, knobs, back plates, push plates, towel bars, towel rings, door stops, latch sets, door knobs, rosettes, sash locks, sash lifts, strikes, screen hangers, coat and hat hooks, brackets for shelves and rails, house numbers, door grills and knockers, chain latches, thresholds, pole sockets, hooks, closet rod and shelf supports, slotted shelf brackets, and bumpers."

Appellant relied on its registrations of the following marks:

[A7697]

for "stove pipe, including elbows, T joints, reducers, and flue thimbles; space heaters * * * ; ovens, heating drums, camp stoves, and rain caps, comprising chimney and stack cowls;" [4]

[A7698]

for solenoid valves;[5] and

[A7699]

for "receptacles—namely, pails, tubs, refuse cans and pails, trash burners, utility buckets and mail boxes." [6] It appears that the mark has also been used in connection with certain agricultural feeders and waterers. Appellant pointed out that the use of "JE in a diamond" on the items listed in its Registration No. 506,825, supra, dates back to 1924. Appellant contended that it had a long established name in the hardware field, and that "padlocks are a natural area of expansion" for appellant's business. Appellant also contended that the nature of the marks, the goods and the channels of trade were such that confusion, mistake or deception would not be likely.

The board held that to the extent that appellant relied on its prior rights in its marks as a basis for attacking the validity of appellee's registrations, the attack was improper in this opposition proceeding. The board also held that appellant's prior use of its mark was not "otherwise relevant to the question of its present right to the registration thereof for padlocks," citing Purex Corp. v. Maryland Paper Products Co., 287 F.2d 186, 48 CCPA 848 (1961). Finally, the board held that there was a likelihood of confusion.

Appellee argues that the "expansion of business" doctrine is purely a defensive one, used only to prevent registration or use of a mark. Appellee states:

The "expansion of business" doctrine is believed to be inoperative for pusposes [sic] of *obtaining* the right in gross to use a mark, or *securing* the right to registration in a situation where the result is likelihood of confusion.

Appellee cites Haggar Co. v. Hugger Corp., 172 USPQ 253 (TTAB 1971) as supporting its position.

3. Registration No. 784,702, registered February 9, 1965, date of first use June, 1961, and registration No. 785,054, registered February 16, 1965, date of first use October, 1961, respectively.

4. Registration No. 506,852, registered February 22, 1949, date of first use February 1, 1924.

5. Registration No. 604,778, registered April 19, 1955, date of first use May 4, 1951.

6. Registration No. 717,362, registered June 27, 1961, date of first use April 14, 1960.

*Opinion*

In Purex Co. v. Maryland Paper Products Co., *supra,* the applicant was attempting to register SWEETHEART for certain paper products. Opposition was based on registration of SWEETHEART for toilet soap. Applicant relied on its three prior registrations of SWEETHEART for other paper and related products, and contended that since the opposer had not challenged the applicant's right to use the mark on the goods recited in those registrations, opposer was guilty of laches. This court held that the fact that the applicant had previously applied for registration of the mark on other products "does not per se place a duty upon opposer to take legal action on peril of losing its exclusive rights to its mark on toilet soap and products related thereto."

■ That was the extent of this court's holding in *Purex* with regard to prior registrations by an applicant. It did not hold that an applicant's prior registration or use of a mark could not be relevant to his present right to register, as the board's opinion in the present case implies. Such a holding would be inconsistent with a long line of cases to the effect that, if an applicant had previously registered the same or a substantially identical mark for the same or substantially identical goods opposition cannot be sustained because of a lack of possibility of damage to the opposer. See Joseph & Feiss Co. v. Sportempos, Inc., 451 F.2d 1402, 59 CCPA 742 (1971); Morehouse Mfg. Corp. v. J. Strickland & Co., 401 F.2d 881, 56 CCPA 946 (1969); and cases cited therein. However, appellant cannot prevail under that line of cases in the present situation, since padlocks are substantially different goods from those upon which appellant has its previous registrations, and it cannot be said here that there would be no *added* damage to opposer from appellant's proposed regis-

tration. See Key Chemicals, Inc. v. Kelite Chemicals Corp., 464 F.2d 1040, 59 CCPA 1231 (1972).

■■ We agree with appellee that the "expansion of business" doctrine is purely a defensive doctrine. The policy underlying that doctrine is that when a consumer who is familiar with a mark which has been established for a particular line of goods sees the same or a similar mark on goods which the supplier would logically expand his business to include, he would be likely to attribute those goods to that supplier. There is no comparable consideration to be made in the case of an application where the applicant had previously registered or used the mark on different goods, for the statute deals only with a likelihood of confusion between the mark on the goods applied for and the *opposer's* mark on his goods. There is no right to register one's mark on an expanded line of goods where the use of the mark covered by such registration would lead to a likelihood of confusion, mistake or deception. Key Chemicals, Inc. v. Kelite Chemicals Corp., *supra,* 59 CCPA at ——, 464 F.2d at 1043; see also Haggar Co. v. Hugger Corp., *supra,* 172 USPQ at 254.

■ Considering the obvious similarities between the marks, the nature of the goods to which they are applied and the channels of trade through which those goods travel, we have no difficulty in agreeing with the board that there would be a likelihood of confusion within the meaning of section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). In reaching that conclusion we have given consideration to the case of Jenkins Bros. v. Newman Hender & Co., 123 USPQ 50 (TTAB 1959), as well as registration apparently owned by Jenkins Brothers,[7] which was introduced during the testimony taken on applicant's behalf, but they are not persuasive of error in the board's decision. However, we have given no consideration to third

7. Registration No. 593,530, registered August 10, 1954. The mark registered consists of the letters JB within a diamond, for use on various kinds of metal valves.

party registrations which appellee apparently attempted to introduce into the record in its brief before the board, after its testimony period had expired.

The decision of the board is affirmed.

Affirmed.